# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**AUSTIN TYLER CATES**                                                                          **PLAINTIFF**

v.                                                **CIVIL ACTION NO. 5:25-CV-P159-JHM**

**KENTUCKY STATE PENITENTIARY et al.**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Austin Tyler Cates, a prisoner at the Kentucky State Penitentiary (KSP), proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). First, however, the Court considers Plaintiff's motion to correct the complaint (DN 18).

Plaintiff's motion seeks to correct the spelling of Thomas Mennorf's last name to "Middendorf" and to correct the date of the incident referred to in his complaint as having happened on August 1, 2025, to July 30, 2025.

**IT IS ORDERED** that Plaintiff's motion (DN 18) is **GRANTED**.

The **Clerk of Court is DIRECTED** to change the name of Thomas Mennorf to Thomas Middendorf in the caption of this case.

### I. STATEMENT OF CLAIMS

Plaintiff sues the Kentucky State Penitentiary (KSP), the Department of Corrections (DOC), and the KSP Medical Department; and in their official and individual capacities KSP Warden Laura Plappert, Lt. Justin Defendant Horne, CO Thomas Defendant Middendorf, and D.O.N. Kelly Neely. His complaint first contains allegations concerning an incident on July 30,

2025,[1] in which he was not allowed to urinate in private while he was on "constant watch [with] 5-min[ute] documentation." He states that when he told Defendant Horne, who was observing him per the "constant watch" protocol, that he needed to urinate, Defendant Horne gave him a plastic urination bottle and drew his OC spray, threatening to "'paint me orange' if I move 'anywhere he doesn't like.'" Plaintiff states that he became nervous and could not urinate. When he explained this to Defendant Horne, he then took out his taser, aimed it at Plaintiff's exposed genitals, and stated, "'Hurry the f*** up before I shock the piss out of you.'" Plaintiff states that he was able to urinate after about a minute and handed Defendant Horne the bottle with no further incident.

On the same day, in preparation to be escorted to "medical" for an x-ray, Defendant Horne placed Plaintiff in wrist restraints and ordered him to assume the "kneeling position" before opening the cell door. Defendant Horne had his taser out as the cell door opened. He then holstered his taser and applied leg restraints while Plaintiff was still in the kneeling compliance position. Plaintiff alleges that Defendant Horne then drew his taser, aimed it at Plaintiff's back saying "'Try anything and I will use both dart packs and drain this battery,'" then "forcefully" grabbed his arms, "yank[ed]" him to his feet, and aimed his taser directly at him. According to Plaintiff, Defendant Horne has a "history" of threatening to use force against him to "frighten and degrade" him.

Plaintiff's second claim involves an incident occurring on June 24, 2025, when Defendant Middendorf lifted the shower curtain exposing Plaintiff's naked body while Plaintiff was in the shower in 3 cellhouse, looked at his genitals, commented, "Wow, that's nice," and then dropped the curtain. Plaintiff immediately informed a supervisor that he wished to file a Prison Rape Elimination Act (PREA) complaint about Defendant Middendorf. Defendant Middendorf then

---

[1] Previously identified in the complaint as August 1, 2025, now corrected to July 30, 2025.

came to his cell in 3 cellhouse to conduct a strip search; when Plaintiff refused to allow Defendant Middendorf to strip search him, a lieutenant ordered Defendant Middendorf to exit the walk, and Plaintiff was escorted to 7 cellhouse.

Plaintiff alleges that he was initially denied his request to report a PREA violation about this incident but states that on June 26, he was told by a supervisor that a PREA investigator would be coming to talk to him. He explains that, at that time, he was housed on suicide watch due to his "fear, anxiety, and trauma." Defendant Horne placed Defendant Middendorf on duty to watch Plaintiff who had no clothes but did have a "suicide smock." Defendant Middendorf confiscated his suicide smock leaving Plaintiff completely naked.[2] Plaintiff states that he sat on his bed for the next 6 hours to hide his nudity, even urinating on himself, rather than exposing his fully naked body to Defendant Middendorf. Plaintiff alleges that during that time Defendant Middendorf "attempt[ed] to interrogate me about the report making comments stating, 'It's my word against yours.'"

Plaintiff states that on June 30, he spoke to a "Mental Health" staff member and had him report the PREA violation. He also handed a written grievance to a sergeant to be placed in the mail. On July 2, Plaintiff asked a grievance aide making rounds whether his grievance had been received and was informed that it had not been. The aide explained to Plaintiff that, in any event, the DOC does not address grievances regarding sexual abuse through the grievance system.

A month later, according to the complaint, Defendant Middendorf opened Plaintiff's tray slot to deliver his meal. He asked Plaintiff, "'How's that PREA working out for you?'" and then served him only half of the juice he should have been given (4 ounces instead of eight). When

---

[2] In his motion for emergency transfer he describes that when Defendant Middendorf removed the suicide smock, he told the other staff that Plaintiff was putting his hands where Defendant Middendorf could not see him. DN 17-5, ("constant watch log" records reflect that at 4:03 Plaintiff's hands could not be seen and "smock taken."). He also alleges that Defendant Middendorf "continuously lustfully gazed at him."

3

Plaintiff asked why, Defendant Middendorf responded, "'Don't file f***ing PREA's on me'" and told Plaintiff to move his hand or he would "'spray the f*** out of you'" and pulled out his OC spray. Plaintiff then stated, "'Spray me, I'm not being combative, I want to see a supervisor.'" Defendant Middendorf holstered the spray and pulled out his taser, asking, "'Ok, you want the f*****g tazer instead you lying little bitch?'" Plaintiff then moved back from the tray slot and began striking his door, alerting a supervisor and reported the incident. Plaintiff then decided to be put on suicide watch "to get moved from Defendant Middendorf." He refused to "cuff up" until three other officers were present. Those officers agreed to move him to 3 cellhouse.

Plaintiff states that he was released from constant watch status on August 20, 2025, and placed in the strip cage in 7 cellhouse, where Defendant Horne and Defendant Middendorf were on shift, for a search. Defendant Horne sent Defendant Middendorf to conduct the strip search. Plaintiff refused to comply and asked for a different officer, at which point Defendant Middendorf threatened to deploy OC spray. Plaintiff then complied. Defendant Middendorf told him to stay in the camera's view and stated, "Now I get to see that c*** legally.'" When Plaintiff was bent over, Defendant Middendorf commented, "Dam I love my job.'" According to Plaintiff, nothing had been done about his original PREA report.

Plaintiff's third claim alleges HIPAA violations by security and medical staff because every medical appointment assessment is done with an officer present, even his assessment for a cyst on his testicle. When he objected, Defendant Nurse Neely told him that the presence of staff was "'necessary for the safety and security of the institution.'" He alleges that during an ultrasound of his testicle, which was performed by an outside radiology technician, and again on another occasion when his pants were pulled down to receive a shot in his buttocks for a spider bite, several staff were present. He states that while partially naked to receive the shot he was in view of the

window. He alleges that his equal protection right was violated by these HIPAA violations. In the grievance concerning these events which is attached to the complaint he stated that in receiving his shot his naked buttocks were exposed on camera and to the officers present.

Plaintiff's fourth claim alleges violations of the Fourth and Eighth Amendment because "KSP staff" subject inmates to the most "violent, fully unclothed strip searches" of any place he has been. He alleges that Defendant Horne and Defendant Middendorf use strip searches as "a form of punishment and a show of force" to intimidate inmates.

Plaintiff requests compensatory and punitive damages.

Plaintiff attaches to his complaint a grievance dated August 15, 2025, related to the July 30 incident; two pages of a disciplinary write up and investigation; and a grievance form dated September 12, 2025, related to his medical assessments not being private.

Plaintiff has also filed a separate suit against Sgt. Butler, as well as KSP, DOC, Laura Plappert, and Defendant Horne, regarding the November 2, 2025, incident. *Cates v. Kentucky State Penitentiary*, No. 5:25-cv-210-JHM.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the Prisoner Litigation Reform Act (PLRA) requires the trial court to review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must

liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, like KSP and DOC, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. Therefore, official-capacity claim against Defendants in their official capacities, employees of the Commonwealth of Kentucky, must be dismissed for failure to state a claim upon which relief may be granted. And because "[a] prison's medical department is not an entity with a corporate or political existence," the KSP "Medical Department" is not a person under § 1983. *Hix v. Tenn. Dep't. of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006); *see also Downer v. Bolton*, No. 3:17-CV-P341-CRS, 2017 WL 3082676, at *3 (W.D. Ky. July 19, 2017) (dismissing the plaintiff's claim

6

against the LMDC Classification Department because it was not a person subject to being sued under § 1983). Therefore, the official-capacity claims against Defendants and the claims against KSP, DOC, and KSP's Medical Department will be dismissed for failure to state a claim.

### B. Individual-capacity claims

#### 1. Defendant Horne

Plaintiff alleges that while he was on "constant watch," Defendant Horne provided him a urination bottle and drew his OC spray, threatening to "'paint me orange' if I move 'anywhere he doesn't like.'" When Plaintiff stated that he was nervous and could not urinate, Defendant Horne aimed his taser at Plaintiff's exposed genitals, and stated, "'Hurry the f*** up before I shock the piss out of you.'"

Plaintiff also alleges that Defendant Horne placed Plaintiff in wrist restraints and ordered him to assume the "kneeling position" before opening the cell door; had his taser out as the cell door opened; holstered his taser and applied leg restraints while Plaintiff was still kneeling; then drew his taser, aimed it at Plaintiff's back saying, "'Try anything and I will use both dart packs and drain this battery.'" Defendant Horne then "forcefully" grabbed his arms, "yank[ed]" him to his feet, and aimed his taser directly at him. Plaintiff alleges that Defendant Horne has a "history" of threatening to use force against him to "frighten and degrade" him.

Defendant Horne's alleged verbal threats, even accompanied by brandishing his OC spray or taser, do not rise to the level of a constitutional violation. *See e.g.*, *Witten v. Schafer*, No. 5:23CV-P34-JHM, 2023 WL 5193772, at *1-2 (W.D. Ky. Aug. 11, 2023) (dismissing for failure to state a claim prisoner's claim that guard "approached [plaintiff's] cell, opened the tray slot, pointed a can of [OC] vapor spray . . . and threatened to spray the plaintiff if he, at that instant, did not scrape a piece of paper off the wall of his cell; Plaintiff complied immediately."); *Thornton*

*v. Sevier Cnty. Jail*, No. 3:23-CV-191-CLC-JEM, 2023 WL 4707133, at *7 (E.D. Tenn. July 24, 2023) ("Plaintiff's claim that Defendant Sutton threatened to use a TASER on her fails to state a claim upon which relief may be granted under § 1983 because verbal harassment or threats made by prison officials toward an inmate do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).

Plaintiff also alleges that Defendant Horne ordered Defendant Middendorf to perform a strip search on Plaintiff when Plaintiff returned to 7 cellhouse. However, Defendant Horne is not liable for Defendant Middendorf's behavior during the strip search simply because he is his supervisor. *See Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citation omitted). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citation omitted).

Accordingly, the Court will dismiss Plaintiff's claims against Defendant Horne for failure to state a claim upon which relief may be granted.

*2. Defendant Middendorf*

Plaintiff makes the following allegations against Defendant Middendorf. He alleges that on June 24, 2025, Defendant Middendorf exposed Plaintiff's naked body while he was in the shower, looked at his genitals, and commented, "Wow, that's nice."

Plaintiff also alleges that while he was housed on suicide watch, Defendant Middendorf took his suicide smock, leaving him completely naked for six hours during which Plaintiff sat on

the bed and urinated himself rather than stand up.

A month later, Defendant Middendorf opened Plaintiff's tray slot to deliver his meal. He asked Plaintiff, "'How's that PREA working out for you?'" and then served him only half of a glass of juice. When Plaintiff asked why, Defendant Middendorf responded, "'Don't file f***ing PREA's on me'" and told Plaintiff to move his hand out of the slot or he would "'spray the f*** out of you'" and pulled out his OC spray. Plaintiff then stated, "'Spray me.'" Defendant Middendorf holstered the spray and pulled out his taser. Plaintiff began striking his door, alerting a supervisor and reported the incident. Plaintiff then decided to be put on suicide watch "to get moved from Defendant Middendorf." He was allowed to refuse to be "cuff[ed] up" by Defendant Middendorf.

According to Plaintiff on August 20, 2025, when he was placed in the strip cage in 7 cellhouse, Defendant Middendorf was sent to conduct the strip search. Plaintiff refused to comply and asked for a different officer, at which point Defendant Middendorf threatened to deploy OC spray. Plaintiff then complied. Defendant Middendorf told him to stay in the camera's view and stated, "Now I get to see that c*** legally.'" When Plaintiff was bent over, Defendant Middendorf commented, "Dam I love my job.'"

### 1. Bodily privacy

"[C]ourts, including the Sixth Circuit, have recognized that inmates retain limited rights to bodily privacy under the Fourth Amendment." *Wilson v. City of Kalamazoo*, 127 F. Supp. 2d 855, 860 (W.D. Mich. 2000). Such rights are necessarily curtailed due to the fact of confinement in proximity of inmates and the presence of prison guards. *See Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). This limited right to privacy, among other things, "protects [prisoners] from being forced unnecessarily to expose their bodies to guards of the opposite sex." *Kent v. Johnson*,

821 F.2d 1220, 1227 (6th Cir. 1987). Thus, "a prison policy forcing prisoners to . . . be exposed to regular surveillance by officers of the opposite sex while naked – for example while in the shower or using a toilet in a cell – would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004). "In contrast, accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation." *Jones v. Lawry*, No. 2:19-CV-49, 2019 WL 2482361, at *7 (W.D. Mich. June 14, 2019).

Plaintiff does not allege that he was exposed even accidentally to members of the opposite sex. Consequently, the Court finds that Plaintiff does not state a Fourth Amendment claim. *See, e.g.*, *Smith v. Long*, No. 3:18-CV-00061, 2018 WL 3831394, at *4-5 (M.D. Tenn. Aug. 13, 2018) (finding that prisoner's allegation that the jail had cameras in bathroom stalls failed to rise to the level of a constitutional violation because plaintiff did not allege that females viewed the footage) (collecting cases); *Boyer v. Daviess Cnty. Det. Ctr.*, No. 4:19-CV-P77-JHM, 2019 WL 5225459, at *3 (W.D. Ky. Oct. 16, 2019) (finding that a prisoner's allegation that males had to shower in view of each other failed to state a claim upon which relief may be granted under § 1983).

Plaintiff's claims based on being seen naked by Defendant Middendorf will be dismissed.

### 2. Sexual remarks and verbal threats

Defendant Middendorf's alleged remarks directed at Plaintiff, although unprofessional and inappropriate, do not rise to the level of a constitutional claim. *See, e.g.*, *Jones v. Fayette Cnty. Det. Ctr.*, No. 5:15-312-JMH, 2015 WL 6964276, at *2 (E.D. Ky. Nov. 10, 2015) (concluding that "Jones's allegation that Officer Johnson sexually harassed him by asking Jones to show him his penis on one occasion fails to state a claim of constitutional dimension"); *Murray v. Westbrooks*, No. 1:12-CV-133, 2013 WL 6668719, at *3 (E.D. Tenn. Dec. 18, 2013) ("Plaintiff claims Officer Bontrager asked to see his "pinnies."); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th

10

Cir. 2012) (per curiam) ("Wingo alleged that these defendants violated his constitutional rights by verbally harassing him and staring. Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.") (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *Meadows v. Henderson Cnty. Det. Ctr.*, No. 4:20-CV-P31-JHM, 2020 WL 1310500, at *3 (W.D. Ky. Mar. 19, 2020) (claim that guard made a sexual remark to prisoner-plaintiff about another officer and then forcing him to recount this incident to other officers dismissed for failure to state a claim). Thus, Plaintiff's claims against Defendant Middendorf based on his sexual remarks will be dismissed for failure to state a claim.

To the extent that Plaintiff may be asserting a claim regarding Defendant Middendorf's threat to spray him if he did not remove his hand, as already discussed, a claim about an idle threat fails to state a claim. *See Witten*, 2023 WL 5193772, at *1-2; *Thornton*, 2023 WL 4707133, at *7.

### *3. Retaliation*

To the extent that Plaintiff may be alleging that Defendant Middendorf retaliated against him by providing only four ounces of juice, he fails to state a retaliation claim.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Even assuming for purposes of this initial review that Plaintiff having made a PREA report was protected conduct, Plaintiff fails to allege an adverse action that would deter a person of ordinary firmness. *See, e.g.*, *Moore v. Liewert*, No. 22-2056, 2023 WL 8378827 at *3 (6th Cir. Aug. 16, 2023) ("[T]he denial of a single meal, even taking into consideration [the inmate]'s diabetes, is a de minimis event that would not deter a prisoner of

11

ordinary firmness from engaging in protected conduct[.]"); *Williams v. Crafton*, No. 1:22-CV-P86-JHM, 2023 WL 11951237, at *2 (W.D. Ky. Dec. 5, 2023) (holding that taking a Qur'an out of a prisoner's hand on one occasion and confiscating his bed roll for two hours on another occasion would not deter a person of ordinary firmness from filing a federal action); *Hatfield v. Daviess Cnty. Det. Ctr.*, No. 4:17-CV-P12-JHM, 2017 WL 1731713 *4 (W.D. Ky. May 2, 2017) (finding that "the alleged denial of a one-hour recreation period on one occasion does not rise to the level of an 'adverse action' "). This claim will be dismissed.

### 4. Strip search in view of camera

The Sixth Circuit has held that employing a camera to document the lawful strip search of an inmate does not violate either the Fourth or Eighth Amendments. *See Hubbert v. Myers*, No. 92-1232, 1993 WL 326707 at *1 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants conducted a strip search which was videotaped by a female employee); *see also McGibbon v. Stephenson*, No. 22-12167, 2023 WL 8543146, at *3 (E.D. Mich. Dec. 11, 2023) ("The law is clear that the mere act of videorecording a strip search does not violate an inmate's constitutional rights."); *Smith v. Houghton*, No. 2:25-CV-153, 2025 WL 2318473, at *6 (W.D. Mich. Aug. 12, 2025) (citing cases). This claim will be dismissed for failure to state a claim.

### 5. PREA

Plaintiff alleges that although he was initially denied his request to report a PREA violation, he had mental health staff report the PREA violation, but nothing was done.

Courts have recognized that an alleged failure to investigate a PREA complaint does not state a constitutional claim. *See, e.g.*, *Williams v. Guester*, No. 1:22-cv-984, 2023 WL 1813393 at *10 n.8 (W.D. Mich. Feb. 8, 2023) (dismissing due process claims based upon prison officials'

alleged failure to investigate a PREA complaint); *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643 at *5 (W.D. Ky. Nov. 13, 2018) (dismissing a PREA failure-to-investigate claim finding that "an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person") (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)); *see also Bracy v. Tully*, No. 1:22cv827 (RDA/WEF), 2022 WL 3229325 at *3-4 (E.D. Va. Aug. 10, 2022) (holding "no freestanding constitutional right" to an investigation into a PREA complaint under § 1983) (citation omitted) (collecting cases).

Moreover, courts including this one have found that the PREA does not create a private cause of action. *See, e.g.*, *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278 at *4 (W.D. Ky. Sept. 16, 2014) ("[T]he PREA creates no private right of action."); *Shaver v. Raymiller*, No. 25-11475, 2025 WL 2448471, at *2 (E.D. Mich. Aug. 25, 2025) (citing cases); *Peterson v. Burris*, No. 14-CV-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) ("Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners.") (citing cases).

Plaintiff's claims related to his PREA report will be dismissed for failure to state a claim.

### *6. Grievance*

Even if the DOC was an entity that could be sued, Plaintiff has not stated a claim for a lack of grievance procedure for grievances of a sexual nature because prisoners do not possess a constitutional right to a prison grievance procedure.[3] *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance

---

[3] The Court notes that Plaintiff filed several "affidavits" and exhibits after he filed his complaint mostly pertaining to grievances not being responded to.

procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("there is no inherent constitutional right to an effective prison grievance procedure") (citing cases); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (same). This claim will be dismissed for failure to state a claim.

### 7. HIPAA

Plaintiff alleges HIPAA violations by security and medical staff because medical assessments are done with an officer(s) present and that his equal protection right was violated by these HIPAA violations. He alleges that during an ultrasound of his testicle and when his pants were pulled down to receive a shot, several staff were present. He asserts that while partially naked to receive the shot he was in view of the window. According to Plaintiff, Defendant Nurse Neely told him that the presence of staff was "'necessary for the safety and security of the institution.'"

First, Plaintiff has no private right of action under HIPAA. *See Thomas v. Dep't of Health and Human Servs*, No. 17-6308, 2018 WL 5819471, at *2 (6th Cir. Aug. 24, 2018) (and cases cited therein) ("HIPAA itself does not create a private right of action."); *see also Cabotage v. Ohio Hosp. for Psychiatry, LLC*, No. 2:11cv50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012) (collecting cases) ("HIPAA creates neither an express nor an implied cause of action for private citizens to enforce its terms"); *Farrell v. Thompson*, No. 3:17cv692JHM, 2018 WL 662310, at *1 (W.D. Ky. Jan. 1, 2018) (same).

Nor has Plaintiff stated an equal protection claim. The threshold element of an equal protection claim is disparate treatment, which he does not allege. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and

that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Accordingly, Plaintiff's HIPAA and equal protection claims will be dismissed.

*8. KSP strip searches*

The Court has addressed Plaintiff's claims related to strip searches by Defendants Horne and Middendorf above. Plaintiff's claim about "violent, fully unclothed strip searches" by "KSP staff" of "inmates" is both vague and conclusory and prohibited. *Pro se* litigants, like Plaintiff, may only file a complaint on their own behalf pursuant to 28 U.S.C. § 1654, which permits parties to "plead and conduct their own cases personally or by counsel." The Sixth Circuit has "consistently interpreted § 1654 as prohibiting pro se litigants from trying to assert the rights of others." *Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018); *see also Huffman v. Robey*, No. 3:25-CV-P93-CRS, 2025 WL 951944, at *2 (W.D. Ky. Mar. 28, 2025); *Browder v. Hopkins Cnty.*, No. 4:22-CV-00065-JHM, 2023 WL 5192034, at *2 (W.D. Ky. Aug. 11, 2023). "Circuit courts, including the Sixth Circuit, consider this issue to be one of standing." *Boniecki v. City of Warren*, No. CV 22-11578, 2023 WL 2138090, at *2 (E.D. Mich. Feb. 21, 2023). Additionally, Plaintiff makes no allegation of personal injury from "violent" strip searches by "KSP staff" and, thus, fails to state a claim for this reason. The Court will dismiss this claim for lack of standing and failure to state a claim on which relief may be granted. *See, e.g.*, *Smith v. CoreCivic*, No. 17-1247-JDT-CGC, 2018 WL 5726220, at *4 (W.D. Tenn. Nov. 1, 2018).

### III. MOTION FOR EMERGENCY TRANSFER

Plaintiff filed a motion in this case requesting an order for an emergency transfer to another prison, which the Court construes to be a motion for a preliminary injunctive relief (DN 17). His motion refers to the incidents at issue in this lawsuit and to a later incident occurring on November 2, 2025, which is the subject of his separately filed suit. He also states that he has not

15

received requested documents and copies because he has insufficient funds and that he has not received a book sent to him through the mail by the Human Rights Defense Center. These allegations are not contained in the complaint in this lawsuit.

A preliminary injunction is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "In deciding whether to grant a preliminary injunction, a court weighs four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Tippins v. Washington*, No. 20-1480, 2021 WL 3700574, at *3 (6th Cir. Apr. 20, 2021) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr.*, 878 F.3d 524, 527 (6th Cir. 2017).

Here, Plaintiff is not entitled to the requested preliminary injunctive relief because his claims do not survive initial review, precluding a finding of a likelihood of success on the merits. "The likelihood of success on the merits is typically the most important factor of a preliminary injunction analysis, and a 'preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed . . ..'" *Higuchi Int'l Corp. v. Autoliv ASP*, Inc., 103 F.4th 400, 409 (6th Cir. 2024) (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (per curiam)) (citation omitted). And Plaintiff's additional assertions regarding an incident in November, being denied copies, and not receiving a book are not part of his complaint in this action. "[A] party moving for a preliminary injunction must necessarily establish a relationship

16

between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Courts should deny the issuance of an injunction when it pertains to matters "lying wholly outside of the issues in the suit." *Herrerra v. Mich. Dep't of Corr.*, No. 5:10-CV-11215, 2011 WL 3862640, at *4 (E.D. Mich. July 22, 2011) (citing *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945)), *report and recommendation adopted*, 2011 WL 3862390 (E.D. Mich. Sept. 1, 2011). Accordingly,

**IT IS ORDERED** that Plaintiff's motion for emergency transfer (DN 17) is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, by separate Order, the Court will dismiss this case.

Date: December 8, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
4414.009